### UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD SMITH
v.

| | |
|---|---|
| DAUPHIN COUNTY CORRECTIONS SERGEANT KUZO A/K/A SERGEANT CUZO and DAUPHIN COUNTY CORRECTIONS OFFICER, JAMES MILLER and DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE a/k/a HONKY TONK and DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE a/k/a FAT CAT and DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE and WARDEN DOMINICK L. DEROSE, and COUNTY OF DAUPHIN, PENNSYLVANIA and DAUPHIN COUNTY PRISON BOARD | No. 08-CV-1277 |

### RESPONSE OF THE PLAINTIFF, RICHARD SMITH, TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Richard Smith, by and through his undersigned counsel and pursuant to F.R.C.P. 56, hereby responds to the motion for partial summary judgment filed by the defendants. Plaintiff, Richard Smith, hereby requests that the Court deny the defendants' motion for partial summary judgment in accord with the plaintiff's attached proposed Order and brief in opposition to defendants' motion. The plaintiff relies upon all arguments and facts presented in the plaintiff's supporting brief, plaintiff's responses to the Statement of Material Facts in Support of Defendants' Motion for Partial Summary Judgment, Plaintiff's Counter-Statement of Material Facts in Opposition to the Defendants' Motion for Partial Summary Judgment and Plaintiff's Appendix of Exhibits, all of which are being filed contemporaneously along with plaintiff's response in opposition to defendants' motion

WHEREFORE, the motion of the defendants for partial summary judgment should be denied as per the plaintiff's attached proposed Order.

RESPECTFULLY SUBMITTED:
JAFFE & HOUGH


BY:__S/Timothy R. Hough_____ _____
  TIMOTHY R. HOUGH, ESQ.
  Attorney for Plaintiff
   Two Penn Center, Suite 1907
   15th Street and JFK Blvd.
   Philadelphia, PA 19102
   215-564-5200 (phone)
   215-563-8729 (fax)
   Atty. NO.  PA 40898

## UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD SMITH
v.

| | |
|---|---|
| DAUPHIN COUNTY CORRECTIONS SERGEANT | : |
| KUZO  A/K/A SERGEANT CUZO | :     No. 08-CV-1277 |
| and | : |
| DAUPHIN COUNTY CORRECTIONS OFFICER, | : |
| JAMES MILLER | : |
| and | : |
| DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE | : |
| a/k/a HONKY TONK | : |
| and | : |
| DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE | : |
| a/k/a FAT CAT | : |
| and | : |
| DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE | : |
| and | : |
| WARDEN DOMINICK L. DEROSE, | : |
| and | : |
| COUNTY OF DAUPHIN, PENNSYLVANIA | : |
| and | : |
| DAUPHIN COUNTY PRISON BOARD | : |

### CERTIFICATE OF SERVICE

I, Timothy R. Hough, Esq., counsel for plaintiff, hereby certify that on February 22, 2010, I served a true and correct copy of the foregoing Response in Opposition to the Motion for Partial Summary Judgment filed by the defendants, via ECF, to the following persons:

Frank J. Lavery, Jr., Esq.
Devon M. Jacob, Esq.
LAVERY, FAHERTY, YOUNG & PATTERSON, P.C.
 & PATTERSON, P.C.
225 Market Street
Suite 304
Harrisburg, PA 17108-1245


 S/ Timothy R. Hough _____
Timothy R. Hough, Esq.
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

RICHARD SMITH
v.

DAUPHIN COUNTY CORRECTIONS SERGEANT                    :
KUZO  A/K/A SERGEANT CUZO                              :        No. 08-CV-1277
and                                                    :
DAUPHIN COUNTY CORRECTIONS OFFICER,                    :
JAMES MILLER                                           :
and                                                    :
DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE            :
a/k/a HONKY TONK                                       :
and                                                    :
DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE            :
a/k/a FAT CAT                                          :
and                                                    :
DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE            :
and                                                    :
WARDEN DOMINICK L. DEROSE,                             :
and                                                    :
COUNTY OF DAUPHIN, PENNSYLVANIA                        :
and                                                    :
DAUPHIN COUNTY PRISON BOARD                            :

**ORDER**

AND NOW, this        day of        , 2010, upon consideration of the defendants' Motion

for Partial Summary Judgment and the plaintiff's response thereto, it is hereby ORDERED and

DECREED that said Motion is DENIED as to plaintiff's claims asserted under § 1983 against

defendants, Warden Dominick L. DeRose and County of Dauphin, Pennsylvania.  It is further

ORDERED that defendants' Motion for Partial Summary Judgment is DENIED as to plaintiff's

Fourth Amendment claims and plaintiff's claims asserted under 42 U.S.C. § 1983.  It is further

ORDERED and DECREED that defendants' Motion is GRANTED as to plaintiff's claims against

the Dauphin County Prison Board and the John Doe defendants and GRANTED as to the plaintiff's

First Amendment claims under § 1983.

BY THE COURT:

_____
CHRISTOPHER C. CONNER
United States District Judge

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD SMITH

v.

DAUPHIN COUNTY CORRECTIONS SERGEANT            :
KUZO  A/K/A SERGEANT CUZO                       :        No. 08-CV-1277
and                                             :
DAUPHIN COUNTY CORRECTIONS OFFICER,             :
JAMES MILLER                                    :
and                                             :
DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE     :
a/k/a HONKY TONK                                :
and                                             :
DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE     :
a/k/a FAT CAT                                   :
and                                             :
DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE     :
and                                             :
WARDEN DOMINICK L. DEROSE,                      :
and                                             :
COUNTY OF DAUPHIN, PENNSYLVANIA                 :
and                                             :
DAUPHIN COUNTY PRISON BOARD                     :

## PLAINTIFF'S BRIEF IN OPPOSITION TO THE MOTION OF
## DEFENDANTS FOR PARTIAL SUMMARY JUDGMENT

TIMOTHY R. HOUGH, ESQ.
Attorney for Plaintiff
Two Penn Center, Suite 1907
15th Street and JFK Blvd.
Philadelphia, PA 19102
215-564-5200 (phone)
215-563-8729 (fax)
Atty. NO.  PA 40898

**TABLE OF CONTENTS**

Table of Authorities ............................................................................................. ii

Procedural History ............................................................................................ 1

Statement of Facts............................................................................................ 1

Questions Presented......................................................................................... 1

Argument........................................................................................................... 2

    I.      Plaintiff has asserted a cognizable claim against Warden Dominick
           DeRose, under 42 U.S.C. § 1983 ........................................................... 3

    II.     Plaintiff has asserted cognizable claims against defendant, Dauphin
           County, under 42 U.S.C. § 1983 ............................................................. 8

    III.    The John Doe Corrections Officer Defendants are Entitled to
           Summary Judgement as the plaintiff has not filed an amended
           complaint identifying the officers.......................................................... 15

    IV.    Plaintiff has asserted cognizable § 1983 claims under both the
           Fourth and Fourteenth Amendments...................................................... 15

    V.     Plaintiff has asserted proper claims for constitutional violations,
           under 42 U.S.C. § 1983, upon which relief may be granted ................. 17

Conclusion........................................................................................................ 19

## TABLE OF AUTHORITIES

### Acts, Rules and Statutes

42 U.S.C. §1983 ............................................................... 3, 4, 8, 9, 10,11,17,18

FED. R. CIV. P. 56 ............................................................................... 2

### CASES

Bieros v. Nicola, 860 F. Supp. 226 (E. D. Pa. 1994)............................................16

Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358 (3ʳᵈ Cir. 1992), cert.denied, 570 U.S. 912 (1993).......................................................................   2

Bracey v. Grenoble, 494 F.2d 566 (3ʳᵈ Cir. 1974)................................................. 4·

Brothers v. Lawrence County Prison Board, 2008 WL 146828 (W.D. Pa. 2008)............... 17

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)........................................................2

City of Canton v. Harris, 489 U.S. 378 (1989)....................................................... 11

Collins v. Derose, et al., 2009 WL 8120089 (M.D. Pa. 2009)............................... 17

County of Sacramento v. Lewis, 532 U.S. 833 (1998)....................................... 16

Detty v. MacIntyier, et.al., 2007 WL 4179854 (E.D. Pa.)........................................   16

Eichelman v. Lancaster County, 510 F. Supp.2d 377 (E.D. Pa. 2007)...................... 4

Gonzaga University v. Doe, 536 U.S. 273 (2002)............................................... 17,18

Graham v. Connor, 490 U.S. 386 (1989)..........................................................15,16

Healy v. New York Life Ins. Co., 860 F.2d 1203 (3ʳᵈ Cir. 1988)............................   2

Holocheck v. Luzerne County Head Start, Inc., 385 F. Supp.2d 491 (M.D. Pa 2005)........... 18

Land v. The City of Dover, 2007 WL 4205977 (D.Del.)........................................   16

Monell v. Dept. of Social Servs., 436 U.S. 658 (1978)......................................4,8,9

Newkirk v. Sheers, 834 F.Supp. 772 (1993)....................................................17

Rode v. Dellarciprete, n845 F.2d 1195 (3ʳᵈ Cir. 1988)...................................3, 4, 5

Simmons v. Philadelphia, 947 F.2d 1042 (3rd Cir.1991)..........................................11

Sutton v. Rasheed, 323 F.3d 236 (3d Cir. 2003)....................................................3

United States v. Johnstone, 107 F.3d 200 (3d Cir. 1997).....................................16

United States v. Lanier, 520 U.S. 259 (1997).........................................................16

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD SMITH
v.

| | | |
|---|---|---|
| DAUPHIN COUNTY CORRECTIONS SERGEANT | : | |
| KUZO  A/K/A SERGEANT CUZO | : | No. 08-CV-1277 |
| and | : | |
| DAUPHIN COUNTY CORRECTIONS OFFICER, | : | |
| JAMES MILLER | : | |
| and | : | |
| DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE | : | |
| a/k/a HONKY TONK | : | |
| and | : | |
| DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE | : | |
| a/k/a FAT CAT | : | |
| and | : | |
| DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE | : | |
| and | : | |
| WARDEN DOMINICK L. DEROSE, | : | |
| and | : | |
| COUNTY OF DAUPHIN, PENNSYLVANIA | : | |
| and | : | |
| DAUPHIN COUNTY PRISON BOARD | : | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO THE MOTION OF DEFENDANTS FOR PARTIAL SUMMARY JUDGMENT

## I.      STATEMENT OF THE CASE AND PROCEDURAL HISTORY

See Plaintiff's Counter-Statement of Material Facts filed contemporaneously with plaintiff's

Brief in Opposition.

## II.     QUESTIONS PRESENTED IN DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

I.      Is Warden Dominick DeRose entitled to summary judgment because plaintiff is unable to establish a claim against him upon which relief may be granted?

SUGGESTED RESPONSE:  NO

1

II.     Are Dauphin County and the Dauphin County Board of Prison Inspectors entitled to summary judgment because plaintiff is unable to establish a claim against them upon which relief can be granted?

SUGGESTED RESPONSE:  NO as to Dauphin County; YES as to the Dauphin County Board of Prison Inspectors

III.    Are the John Doe defendants entitled to summary judgment because plaintiff is unable to establish a claim against them upon which relief may be granted?

SUGGESTED RESPONSE:  YES

IV.     Are the defendants entitled to summary judgment on the plaintiff's First and Fourth Amendment claims because plaintiff is unable to establish a claim against them upon which relief may be granted?

SUGGESTED RESPONSE:  NO as to plaintiff's Fourth Amendment Claim; YES as to plaintiff's First Amendment Claim

V.      Are the defendants entitled to summary judgment on the direct claims asserted pursuant to 42 U.S.C. § 1983 because plaintiff is unable to establish a claim against them upon which relief may be granted?

SUGGESTED RESPONSE:  NO

## III.    LEGAL ARGUMENT

It is well established that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c) (1994).  The party moving for summary judgment has the initial burden of showing the basis for its motion.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movant.  Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3rd Cir. 1992), cert. denied., 570 U.S. 912 (1993).  An issue involving a material fact is genuine if the evidence is such that a "reasonable jury could return a verdict for the non-moving party." Healy v. New York Life Ins. Co., 860 F.2d 1203, 1219 n.3 (3rd Cir. 1988).

2

I.    **PLAINTIFF HAS ASSERTED A COGNIZABLE CLAIM AGAINST WARDEN DOMINICK DEROSE, UNDER 42 U.S.C. § 1983.**

Warden Dominick, as the Warden of Dauphin County Prison, is responsible for and oversees the day to day operations of the prison.  As a prison warden, his job duties would entail responsibility for ensuring the inmates have the proper food, clothing and access to programs they need while they are incarcerated.  As the Warden, he would also responsible for keeping the inmates safe within the prison and oversee the training of the correctional officers and lesser supervisors within the prison.

Plaintiff has asserted a § 1983 claim against Warden DeRose stemming from his beating and defendants argue that because Warden DeRose did not have "personal involvement in the alleged wrongs" involving the plaintiff, he cannot be liable. [Sutton v. Rasheed, 323, F.3d 236, 249 (3d Cir. 2003), quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988).]  Defendants then simply state that, since Warden DeRose, himself did not personally beat the plaintiff, he cannot be held liable.  In actuality, there is more to it than that.

Interestingly, defendants acknowledge the further holding of the Rode Court that personal knowledge can be shown through allegations of personal direction *or of actual knowledge and acquiescence.* Id. at 1207.  Clearly, there is enough evidence that Warden DeRose knew of a continued pattern of constitutional rights violations by the defendant correctional officers involved in the plaintiff's beating to rise to the level of acquiescence thus holding the Warden liable on the plaintiff's claims.

Defendants assert that the Warden cannot be held liable on the plaintiff's claims under 42 U.S.C. § 1983 solely on the doctrine of *respondeat superior.*  While the defendants are correct in that assertion, again, plaintiff is not predicating the Warden's liability under this theory but rather the theory of actual knowledge and acquiescence to the practices and customs of the correction officers of the third shift.

In Bracey v. Grenoble, 494 F.2d 566, the Third Circuit, in ruling on a case where a senior officer of guard at a Pennsylvania correctional institution was sued for civil rights violations stemming from the beating of a prisoner by subordinate officers, the appellate court reversed the trial court's entering of a judgment for the plaintiff as the plaintiff's evidence did not prove the defendant supervisor had actual knowledge. The Court did state, however, that it would be more constrained to find actual knowledge and acquiescence if the plaintiff had proved that the supervising guard saw the plaintiff being beaten **or** if there were evidence of a history of such episodes by the participating guards, the court would "be hard put to hold that a trial court's finding of actual knowledge was clearly erroneous." Id. at 571.

In Eichelman v. Lancaster County, 510 F.Supp.2d 377 (E.D. Pa. 2007), a prison detainee brought a § 1983 claim against a corrections officer, a county prison and the prison warden while detained for a short period in county prison. The plaintiff's claims against the warden in Eichelman appeared in the Count in plaintiff's complaint encaptioned "Policy, Custom, Pattern and Practice." Noting that such claims "ordinarily pertain to liability that may be attributed to a local governmental unit as opposed to an official under the Monell case," the Court saw no reason to disallow the plaintiff to proceed with his § 1983 claim against the warden individually based upon plaintiff's stated claims. Id. at 397.

In the Rode case cited by the defendants, the plaintiff civil rights action included as a defendant the Governor of Pennsylvania, Richard Thornburgh. Along with the Governor, the plaintiff, a civilian employee of the state police department, included as defendants state police officers and various state officials. The plaintiff alleged that the Governor had "personal knowledge" of her alleged harassment by the defendant police officers because of the grievances she filed with the Governor's Office of Administration. The Court found that, in a large state employing many thousands of people, a holding that the Governor had personal knowledge of the

4

plaintiff's grievances would potentially make the Governor liable in any civil rights claim were the plaintiff transmitted a complaint to his office of administration. Rode, supra at 1209. The case at bar can be distinguished from the Court's reasoning in Rode. Warden DeRose is a prison warden in a county prison; he is not the Governor of the Commonwealth of Pennsylvania. Clearly, one would expect than any and all grievances filed against corrections officers in the Dauphin County Prison would be brought to his attention as he is responsible for supervising the operations of the prison.

Turning to those grievances, interestingly, in the defendants' Statement of Material Facts, defendants state that the Warden is not aware of any rumors of "bad reputation for the third shift or the shakedown unit." Defendants' SMF ¶ 20. Prior to the incident involving the plaintiff (**and thereafter**), the Warden was not aware of an inordinate number of "application of force"incidents in the intake area; nor is there any evidence of such. Defendants' SMF at ¶ 20.

Further, at deposition, the Warden testified that he never heard the terms "Raiders of the Night" or "Goon Squad." when referring to the third (night) shift of the shakedown unit. Id. at p. 22. Interestingly, however, the Warden testified that he **did** know that Corrections Officer Christopher Miller was called "Flipper." Id. at p. 23. He also knew that Corrections Officer James Miller was called "Honky Tonk", heard others refer to Corrections Officer Andrew Glazewski as "the Judge" and remembered that "at one time" someone was referred to as "Fat Cat." Id. at p. 24. In light of the above, the Warden's testimony that he had never heard the nicknames of the third shift of the shakedown unit appears not to be credible.

The Warden's testimony is even more incredulous in light of the testimony of several inmates concerning the third shift's reputation for administering beatings to inmates. Specifically, inmate, John Richardson, an eyewitness to plaintiff's attack, testified at deposition that "Third shift was the shift that – you just don't mess with third shift. Basically, they do whatever they want.

5

That's when usually they get their licks in, their beatings. And it's known all through the prison."
(Richardson dep. p. 82). Another inmate, Leroy Bradley, testified at deposition, when referring to
the third shift, "We just call them the Goon Squad, late night Goon Squad. Don't come to jail after
12:00." (Bradley dep. p. 50). When asked whether the reputation of the third shift was "common
knowledge" in the prison, Mr. Bradley responded, "Yes." Id. at p. 50. Finally, inmate Neal
McCollum, testified at deposition, that, in his opinion, not only would the Warden have known about
the reputation of the third shift but the Warden would most certainly have been aware of defendant
Corrections Sergeant Anthony Kuzo's reputation. McCollum's testimony is particularly relevant
because McCollum worked as a cook in the prison break room where the corrections officers met
to eat and have coffee. (McCollum dep. p. 44). McCollum testified at deposition about the
reputation of the third shift. Further, McCollum testified that defendant Kuzo had a reputation
among inmates as "one of the main people that put the boot to you. Id. at p. 33. In passing, while
he was coming on and going off his shift in the break room, McCollum testified he would hear
corrections officers talking along the lines of "I beat his ass last night.... we beat the hell out of
another nigger last night, put the breaks to his ass." Id. at p. 34. When asked if the comments
about the beatings were about the third shift, McCollum testified, "The third shift only. The first two
shifts you could do what – just about anything with respect of who you're talking to. Third – you
don't want to go to jail between 10:00 and 6:00, not them hours." Id. at p. 35. McCollum also
testified as to the general use of the terms, "Raiders of the Night" and "Goon Squad" by the
inmates when referring to the third shift. Id. at p. 39.

Plaintiff's expert, Harry C. McCann, Jr., is the Director of Law Enforcement training for
Bucks County, Pennsylvania. Mr. McCann's responsibilities include overseeing the Bucks County
Department of Corrections in its in-service and correctional academy program. Mr. McCann, after
reviewing all documents, transcripts and other relevant materials in the instant matter, opined in

6

his report:

> "it is inconceivable that the warden did not know about the reputation of the third shift booking detail. Every inmate questioned offered the same opinion about the nature of the treatment one could expect from the booking area correctional officers if you came into the prison at night. ... The warden has final supervisory authority over the correctional officers and their supervisors. His lack of response to the situation that everyone else seemed to be aware of set a tone for the corrections officers that their conduct was acceptable." (McCann report dated August 8, 2009).

Finally, the Warden's testimony that he was unaware of the severity of the treatment the inmates suffered at the hands of the corrections officers, most notably the third shift, **even up to the time the Warden testified at deposition in July of 2009**, (Defendants' SMF at ¶ 20) is especially puzzling considering that, on July 12, 2007, the Harrisburg branch of the NAACP and the Dauphin County Prison Board jointly held a public forum to discuss the concerns and grievances former inmates and the public at large had regarding the Prison. Over 20 witnesses testified at the hearing regarding their experiences of being brutally beaten at the prison or regarding the brutality inflicted upon a loved one. The incidents covered a time span going back to 2001. Several of these individuals filed lawsuits. Notably, during the testimony of two individuals who testified about their beatings, Joseph Kramer and Gale Green, which occurred in 2004 and 2005 respectively, the term "Raiders of the Night" was used to refer to the third shift of the prison and further, Mr. Green testified, "whenever you get arrested after 1:00 at Dauphin County Prison, you are getting beat..." (Transcript of the July 12, 2007 NAACP / Dauphin County Prison Board Hearing, Dauphin County Court Reporters, pps. 16, 85). Although the Warden was not in attendance at this hearing, he did testify that he did a "cursory review" of the transcripts. (DeRose dep. p. 48). One would assume that he, as the prison warden, would have more than a passing interest in the hearing.

In summary, in spite of the foregoing, it is Warden DeRose's testimony that, although being employed in his current capacity at the Dauphin County Prison since 1992 and, prior to that time,

acting as Deputy Warden since 1986 (Defendants' SMF at ¶ 5), he was completely unaware of the reputation of the third shift for delivering prisoner beatings, unaware of the inmates' nicknames for the shift and unaware of any of the claims of physical abuse of inmates which occurred during the hours of 10:00 p.m. and 2:00 a.m.   Indeed, the defendants argue in their motion that the "undisputed record establishes that the Warden had no actual or constructive knowledge of any wrongdoing by the defendant officers, the intake unit, the third shift, or the prison staff at large." (Defendants' Brief in Support of Motion, I.B.)   *This begs the question of how the Warden could possibly be doing his job.*   The plaintiff asserts, contrary to the defendants' contention, that there is **more than** ample evidence in the record to support the plaintiff's § 1983 claims against Warden DeRose for his lack of supervision over these corrections officers which plaintiff asserts, rises to the level of condoning the officers conduct to the point where such constitutional violations as complained of by the plaintiff herein constituted a custom, policy or practice condoned by the Warden and the County defendants.

## II.   PLAINTIFF HAS ASSERTED COGNIZABLE CLAIMS AGAINST DEFENDANT, DAUPHIN COUNTY, UNDER 42 U.S.C. § 1983.

While the plaintiff concedes that the Dauphin County Board of Prison Inspectors (the Dauphin County Prison Board as named in plaintiff's complaint) has no capacity to be sued in Federal Court, plaintiff has a cognizable § 1983 claim against the County of Dauphin, as the policymaker for the Prison Board.

Defendants correctly states in their motion that under the Supreme Court's decision in Monell v. Dept. of Social Servs., 436 U.S. 658, 98 S.Ct. 2018, local governments were intended to be included among the "persons" to which § 1983 applies. Id. at 659, 2019. Accordingly, "local governing bodies (and local officials sued in their official capacities) can therefore be sued directly under § 1983 for monetary, declaratory, and injunctive relief ... " and "like every other § 1983

"person," may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such custom has not received formal approval through the government's official decision making channels. Id. at 688-690, 2035-2036. Therefore, while local municipalities cannot be sued under a "respondeat superior" theory, if a policy or custom of the municipality, whether it be "official" or "unofficial", violates an individual's constitutional rights and causes the plaintiff's damages, a § 1983 claim can be made against the municipality under the Supreme Court's ruling in Monell.

Defendants make two arguments on why the County of Dauphin cannot be held liable on the § 1983 claim advanced by plaintiff, Richard Smith. Both arguments are without merit.

The County of Dauphin is the policymaker for the Dauphin County Prison and defendants argue that the Dauphin County Prison had "necessary and lawful policies in place." Defendants' SMF at ¶¶ 10, 21 and 22. The defendants also state that the Prison "had a rigorous oversight and training program for all officers." Defendants' SMF at ¶ 9 through 18. Any reports of "allegations of inappropriate or excessive force are referred to the Dauphin County District Attorney's Criminal Investigation Division ("CID") for investigation." Defendants' SMF at ¶ 8. Defendants believe that simply having allegedly "proper" programs in place for both officer training and investigation into inmates reports of abuse protect the County of Dauphin from liability under Monell. Defendants are mistaken.

Plaintiff's argument is that it was the unofficial "custom" of the third shift of the Dauphin County Prison in its "greeting" of new inmates in the prisons' intake unit and the "policy" in place whereby Warden chose to ignore the inmates' abuse and beatings which, in general, took place during the third shift holds the County liable, under Monell, for the plaintiff's § 1983 claims.

Incredulously, the Warden, who held his position in the prison since 1992, (¶ 1, Affidavit of Warden Dominick L. DeRose, appended as Exhibit 2 to defendants' motion), testified that he was not aware of any rumored or actual unlawful misconduct by officers at the Prison. Defendants' SMF ¶ 20. As discussed at length above, three inmates testified as to the reputation of the third shift at the Prison and the nicknames for the shift, "Raiders of the Night" and "Goon Squad." The Warden denied both knowledge of these rumors including knowledge of the nicknames for the third shift at the time of this deposition on July 8, 2009, which, incidentally, was almost exactly two years *after* the joint hearing held by the NAACP/ Dauphin County Prison Board Hearing where over 20 witnesses testified of the abuses of inmates occurring at the Prison. The Warden's testimony, plaintiff argues, is not credible. In fact, the Warden had to know the reputation of the third shift in general and of the involved officers in particular. The Warden chose to ignore the constitutional violations which occurred on a regular basis during the Prison's third shift and, in so ignoring them, the Warden encouraged the these violations allowing the violations to rise to a level of "custom" or accepted policy which holds the County of Dauphin liable, under § 1983, for plaintiff's constitutional violation claims. Furthermore, the Dauphin County Prison Board was aware of the longstanding problems stemming from inmate beatings within the Prison. The Warden testified at deposition that he had a standing meeting every Tuesday morning with his oversight, the Chairman of the Prison Board to discuss such matters. (DeRose dep. p. 52). The problem, in fact, had become so pervasive that the Dauphin County Prison Board actually participated in a public forum, in July 2007, to address the issue of reports of inmate mistreatment at the Prison. The foregoing is further evidence that the County was well aware of the custom of Prison's corrections officers to inflict prisoner beatings and had allowed it to continue unchecked, thus holding the County liable for plaintiff's constitutional violation claims under § 1983.

Contrary to the defendants' assertions, plaintiff's § 1983 claims against the County are also viable under the Supreme Court's decision in City of Canton, Ohio v. Harris, 489 U.S. 378, 109 S.Ct. 1197 (1989).  In Canton, the Court held that a municipality can be liable under § 1983 for inadequate training of its employees if, this failure to train evidences a "deliberate indifference to the rights of its inhabitants" and the shortcoming can "be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. at 389, 1205. Furthermore, the plaintiff must prove the training deficiency caused the injury. Id. at 391, 1206.  Lastly, under the Third Circuit's decision in Simmons v. City of Philadelphia, 947 F.2d 1042, 1060-61,  (3d Cir. 1991), the "deliberate indifference" standard of Canton must be met by the plaintiff producing evidence of "scienter-like evidence of indifference on the part of a particular policymaker or policymakers."

As plaintiff has already established, there was such an inordinate number of reported complaints of prisoner abuses occurring at the Dauphin County Prison that the Prison Board itself had to participate in a public forum to address the issue in July 2007.  Although the defendants in their Statement of Material Facts cite to a litany of training procedures/courses that the Dauphin County Prison corrections officers undergo, one needs to look no further than the testimony of several of the corrections officers at the Prison, including two who are defendants in the case at bar, to see exactly how inadequate and antiquated the Prison's training for corrections officers was.

Specifically, defendant Sergeant Kuzo considers himself a "lead worker." (Kuzo dep. p. 11). If he is working with other officers in a particular area, he could take care of the other officers' duties as well as his own.  When asked whether he received specialized training to be a lead worker, Sergeant Kuzo replied, "I would say no." Id. at p. 12.  Sergeant  Kuzo also testified that he had taken some specialized training courses with various institutions to acquire certifications under Warden Frye and although he found these course helpful, he had not taken any specialized training courses since the tenure of Warden Frye (presumably some 20 years prior). Id. at p. 13.

11

Defendant Corrections Officer James Miller testified at deposition that prior to starting at the prison in April 1986, he had no training as a corrections officer. (Miller dep. p. 10). After initial training which lasted "a whole month," Miller has received "annual training with the training officer they have here." Id. at p. 17. C.O. Miller testified that he received "annual training every year." for "A week – used to be a week." Id. at pp. 15-16. Significantly, when C.O. Miller, who has worked under at least three different Prison Wardens since 1986, was asked whether the annual training was different under each of the wardens, he replied, "No, sir." Id. at p. 17. Corrections Officer James Heckard also testified at deposition that inhouse training is received "at least once a year if not every other year." (Heckerd dep. p. 8).

Corrections Officer Jeffrey Yohn testified that he had worked at the Dauphin County Prison for 8 and a half years. (Yohn dep. p. 8). After his initial training at the training academy in Elizabethtown which lasted 8 to 12 weeks, C.O. Yohn testified that he has had only annual inhouse training at the Prison. Id. at pp. 8-9. Since starting at the Prison, the annual training he has received has been "the same amount" and "hasn't changed." Id. at p. 10. When asked how much of that time was devoted to the use of force continuum, C.O. Yohn testified, "I would say at least a whole eight hour day of it." Id. at p. 11. Dauphin County Prison Lieutenant, Steven Smith concurred while testifying at deposition. When asked how much time of the annual training is devoted to use of force training, Lt. Smith stated, "I'd guess maybe four to eight hours of that." (S. Smith dep. p. 43). Finally, when Lt. Smith asked whether employees who worked in the booking area are given any special training regarding the use of force, Lt. Smith replied, "No." Id. at p. 48. This last fact is especially surprising given the Warden's testimony that "there were incidents of use of force in there because, you know, it's an intake area and we have a lot more problems there..." (DeRose dep. p. 32). Warden DeRose further testified, "We get individuals off the street. Individuals coming off the street are still intoxicated, they're still high, and usually they're mad at the whole world when

they come in. So you're going to have a lot more opportunities to redirect inappropriate behavior from individuals." Id. at pp. 32-33. Yet, significantly, the corrections officers who work in the intake/booking unit receive no added training on use of force when they deal on a regular basis with individuals who are under the influence and "mad at the world."

Upon review of the transcripts of the depositions taken in this matter, including the involved corrections officers as well as the documents defendants produced in discovery which included the Prison's use of force policy, plaintiff's expert, Harry McCann, Jr. opined that the Dauphin County Prison is not in accord with current accepted practices and procedures regarding the use of force and that the Prison has failed to properly train its corrections officers for an essential part of the job function that they perform. The Prison's current use of force policy was put into effect on May 18, 1995 and, opined Mr. McCann, has "not withstood the test of time." See McCann Report. Numerous advances in philosophy and in training corrections officers are being utilized across the county. These advances include focusing on interpersonal communication skills and diffusing aggressive behavior without resorting to the Prison's policy of "physical control being the first option." Id. In fact, review of the training records of the involved officers, further underscored the "culture of a hands on approach to correctional functions with inmates." McCann further stated, "because of this failure to train, the administration has chosen to cultivate a culture of dealing with resistive inmates in a way that reflects the techniques of decades ago, that being an aggressive, assaultive and potentially abusive approach. Id.

The treatment received by the plaintiff and other inmates is evidence of the aggressive culture fostered by the Dauphin County Prison. When focused reports of inmate abuses are continuously lodged as to a specific shift and/or corrections officers and those officers continue on as they did the day before, without reprimand, correction or significant retraining, the message is made clear. Their conduct will be condoned. The County of Dauphin, as the policymaker for the

Prison, has a duty to step in when the Warden does not. Clearly the Warden, as the County's representative at the Prison, supervising the day to day activities of the inmates and the facility, possessed the requisite mindset or "scienter" required under <u>Simmons</u>, and deliberately ignored the corrections officers' handling of resistive prisoners and the officers' need to be further trained in the proper use of physical force. The Warden stated in his affidavit appended to defendants' motion, "I do not set policy for the DCP; rather, I implement it." (Affidavit of Dominick L. DeRose, at ¶ 9). Plaintiff takes exception to the Warden's statement. Warden DeRose did indeed set policy for the Prison. Every time the Warden ignored even a rumor of prisoner abuse without investigating it, he set policy. Every time the Warden did not discipline a corrections officer who beat up on a prisoner, he set policy. Every time the Warden did not recommend continued use of force training for a corrections officer whom claims of prisoner abuse had been brought, the Warden set policy. Certainly, plaintiff has presented ample evidence, via direct testimony, that the activities of the third shift were common knowledge throughout the Prison and that the Warden would have to have known of it. Plaintiff's expert concurred in this opinion. The County, acting both on its own knowledge and through the actions of its representative at the Prison, Warden DeRose, possessed the requisite knowledge of the need for retraining of the Prison's corrections officers and deliberately chose to ignore it allowing constitutional violations of the inmates to continue. Plaintiff asserts it was the mindset of the policymakers responsible for the Prison to deliberately ignore the need for further training of its corrections officers on the proper use of force and, as a consequence, the County allowed and/or condoned the continued incidents of physical abuse suffered by its Prison inmates.

14

III.  **THE JOHN DOE CORRECTIONS OFFICER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS THE PLAINTIFF HAS NOT FILED AN AMENDED COMPLAINT IDENTIFYING THE OFFICERS.**

As the plaintiff has not motioned the Court to file an amended complaint naming the additional corrections officers involved in the July 6, 2006 alleged beating of the plaintiff,  the two John Doe Corrections Officer Defendants are entitled to summary judgment in accord with the defendants' motion.


IV.  **PLAINTIFF HAS ASSERTED COGNIZABLE § 1983 CLAIMS UNDER BOTH THE FOURTH AND FOURTEENTH AMENDMENTS.**

Defendants, in their brief supporting their motion, argue that the plaintiff is a pre-trial detainee and, as such, has improperly asserted use of excessive force claims under the First and Fourth Amendments.  While the plaintiff does not oppose the defendants' motion for partial summary judgment under the plaintiff's First Amendment claims, plaintiff's claims under the Fourth Amendment are properly pled and defendants' motion for partial summary judgment should be denied as to these claims.

There are **two issues** to be considered based upon the facts in the instant matter. First, was the plaintiff, in fact, a pretrial detainee and, second, if he is deemed to be so, is he able to assert a valid Fourth Amendment claim for use of excessive force?

Defendants assume that plaintiff Smith **is** a pretrial detainee and, therefore, his claims of excessive force **must** fall under the due process clause of the Fourteenth Amendment. Defendants then cite to the Court's decision in <u>Graham v. Connor</u>, 490 U.S. 386, 392-94 (1989) and inaccurately summarize the Court's holding in Graham, by stating that "cases involving the use of force against convicted individuals are examined under the Eighth Amendment's proscription against cruel and unusual punishment, **cases involving the use of force against pretrial detainees are examined under the Fourteenth Amendment,** and cases involving the use of

force during an arrest or investigatory stop are examined under the Fourth Amendment."
Defendants' Brief p. 13.   While defendants' first and third assertions are correctly stated, the
Graham Court made no such decision concerning pre-trial detainees, in actuality stating:

> Our cases have not yet resolved the question whether the Fourth Amendment
> continues to provide individuals with protection against the deliberate use of
> excessive physical force beyond the point at which arrest ends and pre-trial
> detention begins *and we do not attempt to answer that question today.* (emphasis
> added).   Graham at 395.

The decision in Graham simply held that "if a constitution claim is covered by a specific
constitutional provision, such as the Fourth or Eighth Amendment, that claim must be analyzed
under the  standard appropriate to that specific provision, not under the rubric of substantive due
process." County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)
quoting United States v. Lanier, 520 U.S. 259, 272, n. 7, 117 S.Ct. 1219, 1228, n.7, 137 L.Ed.2d
432 (1997).

In fact, both the Supreme Court and the Third Circuit have wrestled with both of the above
questions and neither Court has come to a definitive resolution of either issue.   As stated by the
Court in Detty v. MacIntyier, et al., 2007 WL 4179854 (E.D. Pa.), "the Supreme Court has not yet
determined whether the Fourth Amendment applies when the arrest ends and pretrial detention
begins but it is clear that Courts **apply** the Due Process clause of the **Fourteenth Amendment** to
protect pretrial detainees from excessive force."   Also noted in the Court's recent decision in Land
v. The City of Dover, 2007 WL 4205977 (D.Del.), "As the Third Circuit has observed, '[w]here the
seizure ends and pretrial detention begins is difficult question.'", quoting United States v.
Johnstone, 107 F.3d 200, 207 (3d Cir. 1997) and, further "'[w]hether the Fourth Amendment
continues to protect individuals 'beyond the point at which arrest ends and pretrial detention begins'
is uncertain...'", citing Bieros v. Nicola, 860 F.Supp. 226, 231 (E.D.Pa. 1994).

While the Supreme Court and Third Circuit may still be struggling with these two issues, Courts have held that blanket strip searches of individuals, whether they be convicted prisoners *or* pretrial detainees, trigger valid § 1983 claims under the Fourth Amendment.  See Brothers v. Lawrence County Prison Board, 2008 WL 146828 (W.D. Pa.) (male inmate who refused to submit to strip search by a female corrections officer was forcibly made to comply allowing inmate to assert a Fourth Amendment claim); Collins v. DeRose, et al., 2009 WL 812008 (M.D. Pa.) (strip searches of inmates without probable cause must be "reasonable" so as not to trigger a Fourth Amendment claim).  As to pretrial detainees, the Court in Newkirk v. Sheers, 834 F.Supp. 772 (1993), held that plaintiff pretrial detainees' Fourth Amendment rights were violated when they were unreasonably strip searched at the Schuykill County Prison.

In summary, as it is arguable under the law whether or not plaintiff was a pretrial detainee and, further, whether, as a pretrial detainee, the plaintiff has Fourth Amendment rights, summary judgment is improper on the issue of the plaintiff's Fourth Amendment claims against defendants. Finally, as the plaintiff was subjected to a strip search after he had already been processed by two police departments (Penbrook and Harrisburg), the issue of the reasonableness of defendants' strip search further validates the merit of his Fourth Amendment claims thus further making the grant of Summary Judgment on plaintiff's Fourth Amendment claims unwarranted.

## V.   PLAINTIFF HAS ASSERTED PROPER CLAIMS FOR CONSTITUTIONAL VIOLATIONS, UNDER 42 U.S.C. § 1983, UPON WHICH RELIEF MAY BE GRANTED.

Defendants argue that plaintiff has failed to establish claims upon relief may be granted, under 42 U.S.C. § 1983, for constitutional violations stemming from the defendant corrections officers use of excessive force upon the plaintiff at the Dauphin County Prison on July 6, 2006.  The cases defendants refer to in support of their argument, however, are not on point factually with the plaintiff's claims. Defendants cite Gonzaga University v. Doe, 536 U.S. 273, 279, 122 S.Ct. 2268,

17

2273, (2002) and state that § 1983 claims are not substantive claims allowing for a remedy. Indeed, the Supreme Court has held that, while 42 U.S.C. § 1983 does not itself create any individual rights, actions to enforce rights created by federal statutes as well as by the Constitution may be brought against state actors under 42 U.S.C. § 1983. The statute itself is just a vehicle for plaintiffs to assert such claims. In Gonzaga, the plaintiff was precluded from bringing a § 1983 claim for violation of the Family Educational Rights and Privacy Act (FERPA) because the purpose of the Act was to deny federal funding to schools that have a policy or practice of releasing education records to unauthorized parties, not to grant a remedy for individual plaintiffs. Id. at 277, 2272. The Court held that there was no private right guaranteed to the plaintiff under the language of the statute. Accordingly, § 1983 did not apply. Similarly, in Holocheck v. Luzerne County Head Start, Inc., 385 F.Supp.2d. 491 (M.D. Pa. 2005), the plaintiff was unable to bring at § 1983 claim because she did not have a protected interest in her employment and the case was dismissed; there were no protected individual rights available to her that were violated and § 1983 did not apply.

The cited cases defendants use to support their argument are not even remotely similar to the case at bar wherein the plaintiff is asserting violations of his Fourth and Fourteenth Amendment rights under the Constitution arising from the defendants' use of excessive force. Accordingly, as the plaintiff is an individual seeking a remedy for violations of established rights granted to him by the Fourth and Fourteenth Amendments, he clearly has cognizable claims under 42 U.S.C. § 1983 which, the Supreme Court has ruled, is the proper vehicle of seeking redress for these constitutional violations. For the foregoing reasons, summary judgment in favor of the defendants should not be granted.

## III-CONCLUSION

Based upon the foregoing, plaintiff respectfully requests that this Honorable Court deny the defendants' Motion for Partial Summary Judgment as set forth in the attached proposed Order.

RESPECTFULLY SUBMITTED:
JAFFE & HOUGH


BY:   S/Timothy R. Hough
       TIMOTHY R. HOUGH, ESQ.
       Attorney for Plaintiff
       Two Penn Center, Suite 1907
       15th Street and JFK Blvd.
       Philadelphia, PA 19102
       215-564-5200 (phone)
       215-563-8729 (fax)
       Atty. NO.  PA 40898

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

RICHARD SMITH
v.

| | | |
|---|---|---|
| DAUPHIN COUNTY CORRECTIONS SERGEANT | : | |
| KUZO  A/K/A SERGEANT CUZO | : | No. 08-CV-1277 |
| and | : | |
| DAUPHIN COUNTY CORRECTIONS OFFICER, | : | |
| JAMES MILLER | : | |
| and | : | |
| DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE | : | |
| a/k/a HONKY TONK | : | |
| and | : | |
| DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE | : | |
| a/k/a FAT CAT | : | |
| and | : | |
| DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE | : | |
| and | : | |
| WARDEN DOMINICK L. DEROSE, | : | |
| and | : | |
| COUNTY OF DAUPHIN, PENNSYLVANIA | : | |
| and | : | |
| DAUPHIN COUNTY PRISON BOARD | : | |

## CERTIFICATE OF SERVICE

I, Timothy R. Hough, Esq., counsel for plaintiff, hereby certify that on February 22, 2010, I served a true and correct copy of the foregoing  brief in opposition to the motion for partial summary judgment filed by the defendants via ECF to the following persons:

Frank J. Lavery, Jr., Esq.
Devon M. Jacob, Esq.
LAVERY, FAHERTY, YOUNG & PATTERSON, P.C.
 & PATTERSON, P.C.
225 Market Street
Suite 304
Harrisburg, PA 17108-1245


 S/ Timothy R. Hough
Timothy R. Hough, Esq.
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD SMITH
v.

DAUPHIN COUNTY CORRECTIONS SERGEANT          :
KUZO  A/K/A SERGEANT CUZO                    :       No. 08-CV-1277
and                                          :
DAUPHIN COUNTY CORRECTIONS OFFICER,          :
JAMES MILLER                                 :
and                                          :
DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE  :
a/k/a HONKY TONK                             :
and                                          :
DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE  :
a/k/a FAT CAT                                :
and                                          :
DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE  :
and                                          :
WARDEN DOMINICK L. DEROSE,                   :
and                                          :
COUNTY OF DAUPHIN, PENNSYLVANIA              :
and                                          :
DAUPHIN COUNTY PRISON BOARD                  :

## PLAINTIFF'S RESPONSES TO THE STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, by and through his counsel, hereby responds to the statement of material facts submitted by defendants in support of their motion for partial summary judgment pursuant to local rule 56.1 as follows:

1.     Admitted only that the deposition testimony and affidavit of Warden DeRose set forth the statements quoted.

2.     Admitted only that the deposition testimony and affidavit of Warden DeRose set forth the statements quoted.

3.     Admitted only that the deposition testimony of Warden DeRose sets forth the statements quoted.

4.      Admitted only that the affidavit of Warden DeRose sets forth the statement quoted.

5.      Admitted only that the deposition testimony of Warden DeRose sets forth the statements quoted.

6.      Admitted only that the deposition testimony and affidavit of Warden DeRose set forth the statements quoted.

7.      Admitted only that the affidavit of Warden DeRose sets forth said statements.

8.      Admitted only that the affidavit of Warden DeRose sets forth the statement quoted.

9.      Admitted only that the affidavit of Warden DeRose sets forth the statement quoted.

10.      Admitted only that the deposition testimony and affidavit of Warden DeRose set forth the statements quoted.

11.      Admitted only that the affidavit of Warden DeRose sets forth the statement quoted.

12.      Admitted only that the affidavit of Warden DeRose sets forth the statement quoted.

13.      Admitted only that the deposition testimony and affidavit of Warden DeRose set forth the statements quoted.

14.      Admitted only that the deposition testimony of Warden DeRose sets forth the statement quoted.

15.      Admitted only that the affidavit of Warden DeRose sets forth the statements quoted.

16.      Admitted only that the affidavit of Warden DeRose sets forth the statement quoted.

17.      Admitted only that the affidavit of Warden DeRose sets forth the statements quoted.

18.      Admitted only that the deposition testimony of Warden DeRose sets forth the statements quoted.

19.      Admitted only that the deposition testimony of Warden DeRose sets forth the statements quoted.

20.     Admitted only that the deposition testimony of Warden DeRose sets forth the statements quoted.  By way of further answer, there exists circumstantial evidence that Warden DeRose knew of both the reputation of the third shift and of the shakedown unit and also was aware of the excessive number of "application of force" incidents in the intake area, all as set forth in the attached brief in opposition to defendants' motion for partial summary judgment.

21.     Admitted only that the deposition testimony of Warden DeRose sets forth the statement quoted.

22.     Admitted.

23.     Admitted only that the deposition testimony of Warden DeRose sets forth the statements quoted.

24.     Admitted only that the deposition testimony of Warden DeRose sets forth the statements quoted.

25.     Admitted only that the deposition testimony of Warden DeRose sets forth the statements quoted.

26.     Admitted only that the deposition testimony of Warden DeRose sets forth the statements quoted.

27.     Admitted only that the deposition testimony of Warden DeRose sets forth the statement quoted.

28.     Admitted only that the deposition testimony of Warden DeRose sets forth the statements quoted.

29.    Admitted only that the deposition testimony of Warden DeRose sets forth the statements quoted.

RESPECTFULLY SUBMITTED:
JAFFE & HOUGH


BY:  S/Timothy R. Hough
      TIMOTHY R. HOUGH, ESQ.
      Attorney for Plaintiff
      Two Penn Center, Suite 1907
      15th Street and JFK Blvd.
      Philadelphia, PA 19102
      215-564-5200 (phone)
      215-563-8729 (fax)
      Atty. NO.  PA 40898

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD SMITH
v.

| | | |
|---|---|---|
| DAUPHIN COUNTY CORRECTIONS SERGEANT | : | |
| KUZO  A/K/A SERGEANT CUZO | : | No. 08-CV-1277 |
| and | : | |
| DAUPHIN COUNTY CORRECTIONS OFFICER, | : | |
| JAMES MILLER | : | |
| and | : | |
| DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE | : | |
| a/k/a HONKY TONK | : | |
| and | : | |
| DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE | : | |
| a/k/a FAT CAT | : | |
| and | : | |
| DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE | : | |
| and | : | |
| WARDEN DOMINICK L. DEROSE, | : | |
| and | : | |
| COUNTY OF DAUPHIN, PENNSYLVANIA | : | |
| and | : | |
| DAUPHIN COUNTY PRISON BOARD | : | |

## CERTIFICATE OF SERVICE

I, Timothy R. Hough, Esq., counsel for plaintiff, hereby certify that on February 22, 2010, I served a true and correct copy of the foregoing responses to statement of material facts in support of the defendants' Motion for Partial Summary Judgment via ECF to the following persons:

Frank J. Lavery, Jr., Esq.
Devon M. Jacob, Esq.
LAVERY, FAHERTY, YOUNG & PATTERSON, P.C.
 & PATTERSON, P.C.
225 Market Street
Suite 304
Harrisburg, PA 17108-1245


 S/Timothy R. Hough
Timothy R. Hough, Esq.
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD SMITH
v.

DAUPHIN COUNTY CORRECTIONS SERGEANT
KUZO  A/K/A SERGEANT CUZO                          :     No. 08-CV-1277
and                                                :
DAUPHIN COUNTY CORRECTIONS OFFICER,                :
JAMES MILLER                                       :
and                                                :
DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE        :
a/k/a HONKY TONK                                   :
and                                                :
DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE        :
a/k/a FAT CAT                                      :
and                                                :
DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE        :
and                                                :
WARDEN DOMINICK L. DEROSE,                         :
and                                                :
COUNTY OF DAUPHIN, PENNSYLVANIA                    :
and                                                :
DAUPHIN COUNTY PRISON BOARD                        :

## PLAINTIFF'S COUNTER-STATEMENT OF MATERIAL FACTS IN OPPOSITION TO THE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Richard Smith, by and through his attorney, Timothy R. Hough, Esq., contends that the following material facts present a genuine issue of material facts thereby precluding the entry of partial summary judgment as to the defendants as a matter of law:

1.      On July 6, 2006 at approximately 11:00 p.m., the plaintiff, Richard Smith, was arrested by the Penbrook Police Department on an outstanding warrant following an altercation with plaintiff's girlfriend in a public park. (Smith dep.pp. 23-25).

2.      Plaintiff was taken, without incident, by the Penbrook Police to the Harrisburg Police Station where he was charged with two counts of terroristic threats and two counts of harassment stemming from his fight with his girlfriend.  Ultimately, the terroristic threat charges and one of the harassment charges were dropped with the plaintiff pleading guilty to only summary harassment. Id. at p. 17.

3.      On July 6, 2006, plaintiff appeared before a Magistrate, where bail was set, prior to being transported to the Dauphin County Prison, all without incident. Id. at pp. 26-27.

4.      Upon his arrival at the Dauphin County Prison, the plaintiff was taken to the intake or "shakedown" unit of the prison by defendant, Dauphin County Corrections Sergeant, Anthony Kuzo. (Plaintiff's Complaint at ¶ 18).

5.      After being photographed by Sergeant Kuzo in the shakedown unit, the plaintiff returned to the initial intake area where he was attended to by a different, second Corrections Officer. (Smith dep. pp. 32-33).

6.      Shortly thereafter, although the plaintiff had come to the Dauphin County Prison by way of two police departments, this second Corrections Officer proceeded to initiate a strip search of the plaintiff by ordering the plaintiff to "take your fucking pants off."   Id. at p. 41.

7.      Plaintiff Smith had been wearing swim trunks and a short sleeved shirt. Id. at p. 42.

8.      As the plaintiff was bending down pulling the swim trunks down to knees, he was physically struck with such force that he fell down to the floor landing on his stomach. Id. at pp. 43, 52.

9.      Plaintiff was later told by an eyewitness, inmate, John Richardson, that the Corrections Officer who ordered him to strip and then physically assaulted the plaintiff was defendant Corrections Officer James Miller. Id. at p. 44.

10.     After he was on the ground, the plaintiff, while looking to his right, saw a black, laced boot heading toward his face prior to being struck about the face. Id. at pp. 54-57.

11.     Following the assault with the boot, the plaintiff was assaulted by as many as three to four individuals who proceeded to repeatedly kick the plaintiff about this face, back and stomach and stomp upon the plaintiff's body.  (Plaintiff's Complaint at ¶ 19; Smith dep. pp. 61-66).

12.     During the time the plaintiff was being physically assaulted, the defendant corrections officers were handcuffing the plaintiff. (Smith dep. p. 68).

13.     During the time the plaintiff was being physically assaulted, the defendant corrections officers were calling the plaintiff, "nigger, cock sucker and motherfucker" and one shouted "break his arm; stick it in his ass." Id. at p. 103.

14.     John Richardson, an inmate at the time of plaintiff's assault, was an eyewitness to the plaintiff's beating at the hands of the defendant corrections officers. (Richardson dep. p. 13).

15.     Richardson testified that he saw defendant Sergeant Kuzo and two other corrections officers throw the plaintiff to the ground and "started beating on him." including slamming the plaintiff's head against the concrete floor and kicking the plaintiff about his face and ribs. Id. at pp. 23-31.

16.     Following the assault upon the plaintiff, two corrections officers who were not involved in the assault were called to come and remove the handcuffed plaintiff and escorted the plaintiff from the intake area like they would "drag a rug, carpet..." Id. at p. 33.

17.     As a result of the physical assault upon the plaintiff by the defendant corrections officers, the plaintiff sustained bruises, contusions and lacerations about his body and an avulsion fracture of his nose.  (Plaintiff's Complaint at ¶ 20).

18.     The instant lawsuit was filed by the plaintiff on July 3, 2008, under 42 U.S.C. § 1983, alleging , inter alia, Fourth and Fourteenth Amendment civil rights violations against the defendants stemming from their use of excessive force and infliction of summary punishment upon the plaintiff following his arrest on July 6, 2006.  See Plaintiff's Complaint.

19.     One defendant originally named by plaintiff, Dauphin County Corrections Sergeant Christopher Miller, was dismissed from the action via stipulation of counsel.

20.     During discovery, at least three inmate witnesses testified as to the reputation of the third (night) shift of the intake or "shakedown" unit at the Dauphin County Prison to inflict beatings upon new arrivals.  See deposition transcripts of John Richardson, Neal McCollum and Leroy Bradley.

21.     At deposition, inmate Neal McCollum, testified that the inmates referred to the Prison's third shift using the terms, "Raiders of the Night" and "Goon Squad." (McCollum dep. p. 39).

22.     McCollum, a cook in the prison break room frequented by the corrections officers testified at deposition that corrections officers working the third shift regularly bragged about beating "the hell out of another nigger last night." Id. at 34.

23.     Specifically, McCollum, at deposition, identified Dauphin County Corrections Sergeant Anthony Kuzo as having a reputation among inmates as "one of the main people that put the boot to you." Id. at 33.

24.     Inmate and eyewitness to the plaintiff's beating, John Richardson, testified that "... you don't mess with the third shift. Basically, they do whatever they want. That's when usually they get their licks in, their beatings. And it's known all through the prison." (Richardson dep. p. 82).

25.     Inmate, Leroy Bradley, also testified that the reputation of the Prison's third shift was "common knowledge" as was the reputation of defendant Sergeant Kuzo as "one of the main people that put the boot to you." (Bradley dep. p. 33).

26.     At deposition in July 2009, defendant Warden Dominick DeRose, despite being the active Warden since 1992, indicated he was unaware, **even up to the current time**, of the reputation of the prison's third shift and had never heard the terms "Raiders of the Night" and "Goon Squad." (DeRose dep. p. 22).

27.     The Warden, however, testified that he **did** know that Corrections Officer Christopher Miller was called "Flipper." Id. at 23. He also knew that Corrections Officer James Miller was called "Honky Tonk", heard others refer to Corrections Officer Andrew Glazewski as "the Judge" and remembered that "at one time" someone was referred to as "Fat Cat." Id. at 24.

28.     In July 2007, the Harrisburg branch of the NAACP and the Dauphin County Prison Board jointly held a public forum to discuss the concerns and grievances former inmates and the public at large had regarding the Prison. See transcript - NAACP Public Forum on the Dauphin County Prison, July 12, 2007.

29.     Over 20 witnesses testified at the hearing regarding their experiences of being brutally beaten at the prison or regarding the brutality inflicted upon a loved one. Id.

30.     The incidents complained of at the hearing covered a time span going back to 2001 with several of the complainants filing lawsuits. Id.

31.     Plaintiff's expert, Harry C. McCann, Jr., the Director of Law Enforcement Training for Bucks County, Pennsylvania, has opined that it is inconceivable that Warden DeRose, as the supervisor of the corrections officers and their supervisors, did not know of the reputation of the third shift for delivering prisoner beatings. See Report of Harry C. McCann, Jr.

32.     McCann also opined that the Warden's lack of response to a situation which of which everyone else was aware "set a tone for the corrections officers that their conduct was acceptable. Id.

33.     Moreover, McCann, after reviewing deposition transcripts and materials provided by the defendants in discovery, opined that the Dauphin County Prison is not in accord with current accepted practices and procedures regarding the use of force and that the Prison has failed to properly train its corrections officers for an essential part of the job function that they perform. The Prison's current use of force policy was put into effect on May 18, 1995 and, opined Mr. McCann, has "not withstood the test of time." Id.

34.     McCann further opined that because of this failure to train, the Prison has "chosen to cultivate a culture of dealing with resistive inmates in a way that reflects the techniques of decades ago, that being an aggressive, assaultive and potentially abusive approach. Id.

35.     Finally, plaintiff's expert McCann opined that the beating suffered by the plaintiff at the hands of the defendant corrections officers at Dauphin County Prison on July 6, 2006 was as a direct result of this aggressive culture which the Prison has chosen to foster.  Id.

RESPECTFULLY SUBMITTED:
JAFFE & HOUGH


BY:  S/Timothy R. Hough
TIMOTHY R. HOUGH, ESQ.
Attorney for Plaintiff
Two Penn Center, Suite 1907
15th Street and JFK Blvd.
Philadelphia, PA 19102
215-564-5200 (phone)
215-563-8729 (fax)
Atty. NO.  PA 40898

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD SMITH
v.

DAUPHIN COUNTY CORRECTIONS SERGEANT      :
KUZO  A/K/A SERGEANT CUZO                :    No. 08-CV-1277
and                                      :
DAUPHIN COUNTY CORRECTIONS OFFICER,      :
JAMES MILLER                             :
and                                      :
DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE :
a/k/a HONKY TONK                         :
and                                      :
DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE :
a/k/a FAT CAT                            :
and                                      :
DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE :
and                                      :
WARDEN DOMINICK L. DEROSE,               :
and                                      :
COUNTY OF DAUPHIN, PENNSYLVANIA          :
and                                      :
DAUPHIN COUNTY PRISON BOARD              :

## CERTIFICATE OF SERVICE

I, Timothy R. Hough, Esq., counsel for plaintiff, hereby certify that on February 22, 2010, I served a true and correct copy of the foregoing counter-statement of material facts in opposition to the defendants' Motion for Partial Summary Judgment via ECF to the following persons:

Frank J. Lavery, Jr., Esq.
Devon M. Jacob, Esq.
LAVERY, FAHERTY, YOUNG & PATTERSON, P.C.
 & PATTERSON, P.C.
225 Market Street
Suite 304
Harrisburg, PA 17108-1245

                                        S/Timothy R. Hough
                                        Timothy R. Hough, Esq.
                                        Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD SMITH
v.

DAUPHIN COUNTY CORRECTIONS SERGEANT        :
KUZO  A/K/A SERGEANT CUZO                  :     No. 08-CV-1277
and                                         :
DAUPHIN COUNTY CORRECTIONS OFFICER,     :
JAMES MILLER                          :
and                                           :
DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE  :
a/k/a HONKY TONK                  :
and                                         :
DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE  :
a/k/a FAT CAT                     :
and                                         :
DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE  :
and                                         :
WARDEN DOMINICK L. DEROSE,           :
and                                         :
COUNTY OF DAUPHIN, PENNSYLVANIA        :
and                                         :
DAUPHIN COUNTY PRISON BOARD          :

**APPENDIX OF EXHIBITS IN PLAINTIFF'S BRIEF IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

RESPECTFULLY SUBMITTED:


By:   S/Timothy R. Hough
    Timothy R. Hough, Esq.
    Attorney for Plaintiff

## APPENDIX OF EXHIBITS

**Exhibit A**          Deposition transcript of plaintiff, Richard Smith

**Exhibit B**          Deposition transcript of John Richardson

**Exhibit C**          Deposition transcript of Neal McCollum

**Exhibit D**          Deposition transcript of Leroy Bradley

**Exhibit E**          Report and Addenda Report of plaintiff's expert, Harry C. McCann, Jr.

**Exhibit F**          Transcript of July 12, 2007 NAACP Public Forum on the Dauphin County Prison

**Exhibit G**          Deposition transcript of Dauphin County Corrections Sergeant Anthony Kuzo

**Exhibit H**          Deposition transcript of Dauphin County Corrections Officer James Miller

**Exhibit I**          Deposition transcript of Dauphin County Corrections Officer Jeffrey Yohn

**Exhibit J**          Deposition transcript of Dauphin County Corrections Lieutenant Steven Smith

**Exhibit K**          Deposition transcript of Dauphin County Corrections Officer James Heckard

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD SMITH
v.

DAUPHIN COUNTY CORRECTIONS SERGEANT                  :
KUZO  A/K/A SERGEANT CUZO                            :        No. 08-CV-1277
and                                                  :
DAUPHIN COUNTY CORRECTIONS OFFICER,                  :
JAMES MILLER                                         :
and                                                  :
DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE          :
a/k/a HONKY TONK                                     :
and                                                  :
DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE          :
a/k/a FAT CAT                                        :
and                                                  :
DAUPHIN COUNTY CORRECTIONS OFFICER JOHN DOE          :
and                                                  :
WARDEN DOMINICK L. DEROSE,                           :
and                                                  :
COUNTY OF DAUPHIN, PENNSYLVANIA                      :
and                                                  :
DAUPHIN COUNTY PRISON BOARD                          :

## CERTIFICATE OF SERVICE

I, Timothy R. Hough, Esq., counsel for plaintiff, hereby certify that on February 22, 2010, I served a true and correct copy of the foregoing Appendix of Exhibits in support of plaintiff's brief in opposition to the motion for partial summary judgment filed by the defendants via ECF to the following persons:

Frank J. Lavery, Jr., Esq.
Devon M. Jacob, Esq.
LAVERY, FAHERTY, YOUNG & PATTERSON, P.C.
 & PATTERSON, P.C.
225 Market Street
Suite 304
Harrisburg, PA 17108-1245

S/ Timothy R. Hough
Timothy R. Hough, Esq.
Attorney for Plaintiff